IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| TRAVIS WAKEFIELD, ) | No. 09-03081-01-CR-S-RED |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendant filed a Motion to Suppress [Doc. # 17], to which the United States responded. [Doc. # 20]. The matter was set for an evidentiary hearing, which was held before the undersigned on June 30, 2010. The defendant was present with counsel, Dee Wampler, and the United States was represented by Gary K. Milligan, Assistant United States Attorney.

The government first called Taney County Sheriff's Corporal Dan Luttrell. He was involved in a marijuana investigation in August of 2009 in the Taney County area. On August 3, 2009, a flight crew in a helicopter spotted a marijuana growing operation, and directed him into the plants. He was with Sergeant Matt Funderburk of the Missouri State Highway Patrol . They pulled into the driveway near where they saw the marijuana, and where they could see four-wheeler tracks leading through a field. No one was at the property when they arrived. They went past the house to the marijuana field, where they started pulling and counting the plants. They pulled from several patches, and then went back towards the residence to call for more help from other law enforcement officers. When they got back, defendant was working on his ATV in front of his shop. Corporal

1

Luttrell testified that he had know defendant for years. When they saw defendant, Corporal Luttrell made contact and told him that they had seen marijuana on his property during a flyover. Defendant said it was not his. He was not <u>Mirandized</u> , and was not in custody at this point. The officer did not tell him that he was not free to leave, did not handcuff him, and did not arrest him. The officer asked defendant if he still smoked marijuana occasionally. "He kind of hem-hawed around a little bit and said, 'yeah, I still smoke a little bit of marijuana.'" [Tr. 6]. Defendant continued to deny that the plants in the field were his. Corporal Luttrell then asked him if he had any paraphernalia or any other marijuana on him or on his property, and defendant responded that he had some in his shop. He walked into the shop, and the officer followed behind him. Defendant pulled out a small baggie of marijuana from a filing cabinet. He at first said that was all he had, and then remembered that he had some in his pickup truck, along with a small marijuana pipe. The officer testified that there was no other conversation that he recalled. Corporal Luttrell started making telephone calls in an attempt to get more assistance in eradicating the marijuana plants, which took about 20-30 minutes. Sergeant Funderburk was also present, but Corporal Luttrell was on the phone most of the time. He did not know if the other officer talked to defendant or not. At no point was defendant arrested. He was free to move around the house and free to do whatever he wanted. Corporal Luttrell believed that defendant went back to work on his four-wheeler, which was broken down. He never told him to stay in one place or handcuffed him. Defendant was very cooperative. The officer repeated that they knew each other, and he never became aggressive or even raised his voice toward defendant. When the other officers arrived, Corporal Luttrell went back to the fields to pull more plants. He came back about two or three hours later, when the plants had all been pulled. He transported defendant to the Taney County Jail. The officer testified that defendant said to him on

2

the way that "he had let me down and his family and needed to go back to rehab." [Tr. 10]. During the entire time he was with defendant, he did not read him his Miranda rights, did not know if Sergeant Funderburk did so, and was not present when his rights were read to him.

On cross examination, the officer admitted that it was subsequently determined that the land was not owned by defendant, but rather, by a corporation. He agreed that the plants were pulled from three to five different locations, or more. Some of the plants were quite far from where the house and shop were. He agreed that the property encompassed hundred of acres. He thought it took two to three hours to pull the plants. During that time, Corporal Luttrell reiterated that defendant was left alone to work on a broken down four-wheeler. The officer acknowledged that even though he knew defendant and he was cooperative, there were marijuana misdemeanors occurring in his presence. He denied, however, that he restrained defendant's liberty in any way. While Corporal Luttrell was gone for those two or three hours in the fields, he did not know if defendant was restrained. He knew defendant was not a threat to flee. He did not know if the officers with whom he left defendant knew him. When Corporal Luttrell came back, he did not know who had Mirandized defendant. He believed Corporal Heil made the decision to arrest defendant, and he was arrested while Corporal Luttrell was there. He wasn't sure what time they arrived on the property. He agreed that he never mentioned Miranda in his report about the incident. He had been there before so he knew it was defendant's residence. There had been reports of marijuana being grown on this property before this incident and since this incident, and the officer admitted that defendant had called about marijuana plants on the property. Before and after this event, his department had been out on the property to pull marijuana plants. Defendant was not arrested when this occurred.

On redirect, Corporal Luttrell testified that defendant made the statements after the officer had been out in the fields pulling the marijuana plants the first time.

The government next called Corporal Danielle Heil of the Missouri State Highway Patrol and the COMET Drug Task Force. She was doing marijuana eradication on the day in question. She got a call from Sergeant Funderburk about locating a large marijuana grow in Taney County. She thought she arrived at defendant's residence about 5 p.m. When she got there, Sergeant Funderburk was there, but Corporal Luttrell was not. Defendant and his father were present. Sergeant Funderburk advised her that several different marijuana patches had been found out in the back property, that defendant and his father were the property owners or lived at the residence, and they claimed to have no knowledge of the marijuana plants in the back. He did not indicate that he had placed either of them under arrest, nor had he restrained their liberty in any way. Defendant and his father were tense, but cooperative. She introduced herself to defendant, and told him she was there to assist in the investigation. Defendant said it was his home, and that the barn was his place of business. Corporal Heil testified that she then asked for consent to search the residence because they had located marijuana on the property. Both defendant and his father signed the consent to search form, as defendant explained that they both took care of the property. She read defendant his Miranda rights and had him sign the waiver form. He signed the waiver form at "1707 p.m.," and Corporal Heil testified that she obtained the time off of her cell phone. [Tr. 24]. Both she and Sergeant Funderburk witnessed them signing the forms. After she had obtained the consent to search form and waiver of rights form, she testified that she "probably would have asked him if there was anything, any marijuana or any paraphernalia in the residence that he would want to direct me to since we'd be searching." [Tr. 26]. They searched the residence first, and then searched the

4

barn, where they found several items, such as marijuana seeds and paraphernalia. She asked defendant whether he smoked marijuana, and defendant admitted that he did. She asked him how often he smoked or when the last time was that he did so, and he told her that he had smoked marijuana earlier that day. He stated that the plants on the property were not his. When she asked him about the worn paths from his backyard to the marijuana patch area, he said nothing. They also found marijuana seeds in a lock box. Defendant admitted that they were his, but would not respond to the question regarding what the purpose was for possessing the seeds. She stated that defendant seemed depressed, and when his wife arrived at the residence, there was obvious tension. Corporal Heil testified that she thought she arrested defendant around 6 p.m., which was about 45-55 minutes after having <u>Mirandized</u> him. She informed him that he was under arrest, but she did not handcuff him.

On cross examination, Corporal Heil testified that there was no documentation of when she arrived, other than when she checked her cell phone. She did not go out to the marijuana plots or see the four-wheeler tracks. She was relating what she was told that day, either by Sergeant Funderburk or Trooper Henderson. She thought they had both gone out to where the marijuana was growing. At the time she arrived, Sergeant Funderburk was with defendant and his father, waiting for her to arrive. It is standard practice for her to fill in the time and date on the <u>Miranda</u> waiver form, which she did on this occasion. She did not know if defendant or his father wore glasses. In any conversation with defendant, she never discussed anything about fertilizer, soil samples, watering, or taking care of the plants. She agreed that she did ask incriminating questions regarding defendant's possession of marijuana and talked to him most of the time she was there, which was about two hours. It was about 7 p.m. when they left the area. All the questions she asked at first

were to establish who owned the residence to make sure she was talking to the right person in order to obtain consent to search. Corporal Heil testified that the questions about marijuana possession were all asked after defendant had been Mirandized. Defendant told her the barn was his place of business.

Defendant called Gary Wakefield to the witness stand. He is defendant's father. Mr. Wakefield testified that his children and grandchildren have controlling interest in the property in Taney County. The land is over 2324 acres. They have an agreement with the federal government regarding how the land is to be maintained, and have federal authorities come on the land from time to time. On August 3, 2009, he was telephoned by his son, who called him about 4:45 to 5:00 p.m. In that conversation, defendant asked his father to come to his residence and that he needed a lawyer. He told him during the telephone call that he had been threatened that the land was going to be seized or forfeited. Mr. Wakefield testified that it took him about 10 minutes to get there. He was there at about 5:10-5:20, and Corporal Heil arrived at about 6:45. He and his son were there with Sergeant Funderburk during that time. Defendant was questioned by the sergeant about marijuana usage. They were not Mirandized. He agreed that he heard testimony that he signed a consent-to-search form, but testified that the time was not correct. Miranda rights were read to his son between 6:50 and 7:15 p.m. He stated that Sergeant Funderburk followed his son wherever he went, standing right beside him. Both he and Corporal Luttrell had badges and service revolvers. He felt he was free to leave, but that his son was not. Prior to this date, he testified that he or his son had turned in marijuana growing on the property to law enforcement officers at least two times. Mr. Wakefield also testified that, subsequent to this incident, he called in twice to report that marijuana was growing on the property. He heard defendant answering questions about marijuana usage and

paraphernalia. His Miranda rights were read to him after "they had really hassled him, said that's your marijuana and everything growing." [Tr. 43]. He was arrested around 7:00 p.m. Charges were filed in Taney County, and then dismissed, with federal charges filed thereafter.

On cross examination, Mr. Wakefield testified that he was present when Corporal Luttrell was asking defendant about having and using marijuana. He identified his signature on the consent form, as well as that of his son's on the waiver form and the consent form. He agreed that what Corporal Luttrell said was true as far as defendant getting marijuana out of his office and his truck. Mr. Wakefield stated that Sergeant Funderburk asked him more forceful questions, like where the marijuana was and how long he had been growing it. Mr. Wakefield stated that Sergeant Funderburk followed defendant around the property and asked him questions, "pressing him to confess to growing marijuana." [Tr. 48]. He did not think he was mistaken about the time. He testified that defendant denied knowing anything about the marijuana plants about ten times. He was present when Corporal Heil arrived, which he stated was an hour to two hours after he'd gotten there at 5:00 p.m.

On redirect examination, Mr. Wakefield testified that when he signed the consent form, he couldn't read it. Additionally, he didn't know if the time was filled in when he signed it because he didn't have his glasses on. It was also his testimony that his son cannot read without glasses.

The government recalled Corporal Luttrell. He testified that the incident report indicated that the transport time when the officers left the residence that night with defendant was 6:53 p.m.

On re-cross examination, the officer testified that the incident report indicated that it was 7:13 p.m. when he went back in service. It also indicated that the time when he called in was 5:06 p.m.

7

It is defendant's contention that he was not properly Mirandized and that the statements he made should be suppressed.

The government submits that the only statements that occurred prior to Miranda rights having been read were defendant's statements about who owned the property and who lived in it. It is contended that the statements made regarding defendant's admission to using marijuana, his denial of knowledge of the plants, his lack of explanation for the path to the plants, and his reaction to the question about possessing the marijuana seeds all were made subsequent to him having been read his Miranda rights and having signed a written waiver of those rights.

Regarding defendant's motion to suppress statements, pursuant to Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), a defendant's Fifth Amendment privilege against the inherently coercive effects of custodial interrogations must be protected. A person "must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time that a person is taken into custody for questioning." United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990). The Eighth Circuit Court of Appeals has enunciated a number of factors to determine whether consent has been voluntarily given. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Some of the factors relating to the person giving consent include age, general intelligence and education, prior experience with law enforcement, and whether he or she was under the influence of drugs or alcohol such that would cause mental impairment. See United States v. Mancias, 350 F.3d 800, 805 (8th Cir. 2003) (internal citations omitted). Conduct of law enforcement to be considered includes the length of the detention, whether there was physical intimidation, if the defendant was in custody or under arrest, if the police made promises or misrepresentations, if the interrogation was in a public place, and whether the accused objected to the search or stood by

silently. Id. at 805.

In this case, the evidence establishes that defendant was advised of his Miranda rights by Corporal Heil after she arrived on the scene, which was after Corporal Luttrell had gone back to the fields to assist in pulling more marijuana plants. Although there was a great deal of testimony about what time Corporal Heil arrived and when she read defendant his Miranda rights, after careful review of that testimony, the Court cannot discern anything significant about the time issue that would alter its recommendation regarding the suppression issue. There is no evidence that Corporal Heil interrogated defendant, and there was no evidence produced to indicate that Sergeant Funderburk interrogated him either. There is no question that defendant signed a waiver of rights form; even his father identified his signature. He and his father also signed a consent-to-search form. Whether they may have needed reading glasses, there was no genuine question raised regarding the fact that defendant knew what he was signing. Therefore, the credible evidence establishes that defendant was properly Mirandized.

It is apparent in this case that defendant made a statement regarding personal usage of marijuana before he was Mirandized, according to the testimony of Corporal Luttrell. The evidence supports a finding, however, that he was not in custody at the time and was not being interrogated. Therefore, the statement he made to Corporal Luttrell was not made as a result of a custodial interrogation. Importantly, there were no other statements made, based on the evidence before the Court, which would even lend themselves to suppression in this case. The fact that defendant denied knowledge of the plants, could not explain the paths, or did not answer when he was asked about marijuana seeds do not appear, in the Court's mind, to constitute "statements" for suppression purposes. Additionally, defendant is not charged with possession of marijuana, and while the

statements and evidence regarding marijuana usage may be adverse to his interest at trial, these were not made in violation of Miranda. Rather, the evidence establishes that defendant was not in custody and was free to move about the area, was allowed to continue with what he was working on, was not handcuffed or arrested, and was not subject to police interrogation or oppression at any time, and certainly, not before he was read his rights. Further, the evidence establishes that defendant voluntarily showed the officers his personal marijuana stashes and drug paraphernalia. There is no evidence to support the claim by defendant's father that defendant told any law enforcement officer that he wanted to call a lawyer or had in any way invoked his right to counsel. Accordingly, it must be recommended that defendant's Motion to Suppress be denied.

Based on the foregoing, the Court finds that it must be recommended that defendant's Motion to Suppress be denied.

Therefore, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress be denied.

    /s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 7/21/10